UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CAROL ANN HAWN,
on behalf of A.M.H., a minor,

                         Plaintiff,

v.                                              Civil Case No. 5:14-CV-1387 (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.
_____

APPEARANCES:                              OF COUNSEL:

OLINSKY LAW GROUP                         HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.               ANDREEA L. LECHLEITNER, ESQ.
OFFICE OF REG'L GEN. COUNSEL
– REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

        Currently before the Court, in this Social Security action filed by Carol Ann Hawn

("Plaintiff") on behalf of her daughter, A.M.H., against the Commissioner of Social Security

("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the

parties' cross-motions for judgment on the pleadings.  (Dkt. Nos. 9-10.)  For the reasons set forth

below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for

judgment on the pleadings is granted.

## I.    RELEVANT BACKGROUND

### A.    Factual Background

A.M.H. was born on August 18, 2001.  At the time of the hearing, A.M.H. was in the seventh grade.  Generally, A.M.H.'s alleged impairments are attention deficit hyperactivity disorder ("ADHD") and anxiety.

### B.    Procedural History

On January 25, 2012, Plaintiff filed an application for Supplemental Security Income on behalf of her daughter, A.M.H.  Plaintiff's application was initially denied on June 22, 2012, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was originally scheduled for June 17, 2013, but the hearing was postponed at Plaintiff's request to provide additional time for her to find representation.  (T. 36-43.)  On October 30, 2013, Plaintiff, A.M.H., and their attorneys appeared in a rescheduled hearing before the ALJ, John P. Ramos.  (T. 44-72.)  On January 28, 2014, the ALJ issued a written decision finding A.M.H. not disabled under the Social Security Act.  (T. 13-35.)  On September 11, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-6.)  Thereafter, Plaintiff timely sought judicial review in this Court.

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 19-30.)  First, the ALJ found that A.M.H. was "a school-age child" pursuant to 20 C.F.R. § 416.926a(g)(2) on January 25, 2012, the date that the application for benefits was filed, and was an adolescent on January 28, 2014, the date of the ALJ's decision.  (T. 19.)  Second, the ALJ found that A.M.H. had not engaged in substantial gainful activity at any time relevant to the decision.  (*Id.*)  Third, the ALJ found that A.M.H.'s anxiety disorder, mood

disorder, ADHD, and enuresis were severe impairments, but that A.M.H.'s obesity, tachycardia, ankle sprain, bronchitis, urinary tract infections, and allergic rhinitis were not severe impairments. (T. 19-20.) Fourth, the ALJ found that A.M.H.'s severe impairments, alone or in combination, did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (T. 20-21.) The ALJ considered Listings 112.04, 112.06, and 112.11. (*Id.*) Fifth, the ALJ found that A.M.H.'s severe impairments, alone or in combination, did not functionally equal an impairment set forth in the Listings. (T. 21-29.) Sixth, and finally, the ALJ found that A.M.H. has not been disabled, as defined by the Social Security Act, since January 25, 2012, the date her application was filed. (T. 29.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes five arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred in weighing the opinion evidence of record. (Dkt. No. 9, at 11-15 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred by not recontacting A.M.H.'s teachers, Ms. Matlock and Ms. Hetko. (*Id.* at 12.) Third, Plaintiff argues that the ALJ erred in his functional equivalence analysis because he failed to find that A.M.H. had (a) a marked limitation in the domain of acquiring and using information, (b) a marked limitation in the domain of attending and completing tasks, and (c) an extreme limitation in the domain of interacting and relating to others. (*Id.* at 11-15.) Fourth, Plaintiff argues that the ALJ's credibility determination was not supported by substantial evidence. (*Id.* at 15-17.) Fifth, and finally, Plaintiff argues that the Appeals Council failed to consider new, material evidence. (*Id.* at 17-19.)

Defendant makes four arguments in support of her motion for judgment on the pleadings. First, Defendant argues that the ALJ properly evaluated the evidence of record reasonably found

that A.M.H. did not have two marked limitations in the domains of functioning. (Dkt. No. 10, at 5-15 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ was not required to recontact Ms. Matlock and Ms. Hetko. (*Id.* at 13-15.) Third, Defendant argues that the ALJ properly evaluated Plaintiff's credibility. (*Id.* at 15-18.) Fourth, and finally, Defendant argues that the Appeals Council did not fail to consider new and material evidence because the additional evidence submitted related to a period after the ALJ's decision and, included in the totality of the evidence, would not change the ALJ's actions, findings, or conclusions. (*Id.* at 18-20.)

## II.    RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of 18 is disabled, and thus eligible for Social Security Income benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of 18 who engages in substantial gainful activity . . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to determine whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). The first step of the test, which bears some

similarity to the five-step analysis employed in adult disability cases, requires determining whether the child has engaged in substantial gainful activity.  20 C.F.R. § 416.924(b); *Kittles*, 245 F. Supp. 2d at 488.  If so, then the child is ineligible for Social Security Income benefits.  42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examining whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe because they cause more than a minimal functional limitation.  20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  In essence, a child is disabled under the Social Security Act "if his impairment is as severe as one that would prevent an adult from working." *Sullivan v. Zebley*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If a severe impairment exists, the third step requires determining whether the child meets or equals a presumptively disabling condition identified in the Listings set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1.  20 C.F.R. § 416.924(d); *Zebley,* 493 U.S. at 526.  Equivalence to a Listing can be either medical or functional.  20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7.  If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the 12-month durational requirement is satisfied, the claimant will be deemed disabled.  20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality considers how a claimant functions in six main areas referred to as "domains."  20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8.  The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).  Those domains include the following: (i) acquiring and using

information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

Functional equivalence is established if the child is determined to have an "extreme," or "more than marked," limitation in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment that "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## III.   ANALYSIS

For the ease of analysis, Plaintiff's arguments have been reorganized and renumbered.

### A.   Whether the ALJ Erred in Assessing the Medical Evidence of Record

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10, at 5-15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Under the "treating physician's rule," controlling weight is given to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). When controlling weight is not given to the opinion of a treating physician, or when assessing other medical opinions, the ALJ should consider the following factors to determine the proper weight: (1) the frequency of the examinations and the length, nature and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. 20 C.F.R. § 416.927(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). These same factors should be applied when weighing an opinion from an "other source," such as a teacher. SSR 06-03p, 2006 WL 2329939, at *5 (Aug. 9, 2006) (citing 20 C.F.R. § 416.927[c]); *Smith ex rel. D.R. v. Astrue*, 10-CV-0053, 2011 WL 1113779, *3 (N.D.N.Y. Jan. 20, 2011).

### i. Teachers, Janette Matlock and Kathie Hetko, and, School Counselor, Andrew Quirk

On April 12, 2012, A.M.H.'s fifth grade teacher, Janette Matlock, and A.M.H.'s math teacher, Kathie Hetko, jointly completed a teacher questionnaire rating A.M.H.'s functioning after knowing her for eight months. (T. 177-85.) In the domain of acquiring and using information, Ms. Matlock and Ms. Hetko opined that A.M.H. had a "serious problem" in four areas, an "obvious problem" in five areas, and a "slight problem" in one area. (T. 178.)[1] Ms.

---

[1] Specifically, Ms. Matlock and Ms. Hetko opined that A.M.H. had a "serious problem" in providing organized oral explanations and adequate descriptions, expressing ideas in written form, recalling and applying previously learned material, and applying problem-solving skills in class discussions. (T. 178.) Ms. Matlock and Ms. Hetko opined that A.M.H. had an "obvious problem" in understanding school and content vocabulary, reading and comprehending written material, comprehending and doing math problems, understanding and participating in class discussions, and learning new material. (*Id.*) Ms Matlock and Ms. Hetko opined that A.M.H. had a "slight problem" in comprehending oral instructions. (*Id.*)

Matlock and Ms. Hetko commented that they believe A.M.H. could be more independent with her work, but her behavior interfered with her ability to work independently. (*Id.*)

In the domain of attending and completing tasks, Ms. Matlock and Ms. Hetko opined that A.M.H. had a "very serious problem" in three areas, a "serious problem" in two areas, an "obvious problem" in two areas, and a "slight problem" in five areas. (T. 179.)[2] In the domain of interacting and relating with others, Ms. Matlock and Ms. Hetko opined that A.M.H. had a "very serious problem" in four areas, a "serious problem" in one area, an "obvious problem" in two areas, a "slight problem" in four areas, and "no problem" in two areas. (T. 180.)[3] Ms. Matlock and Ms. Hetko commented that A.M.H. was given a special pass to be excused from class at any time, wandered the halls and asked to leave every class every day, and was switched to a different social studies class because of her behavior. (*Id.*)

On July 1, 2013, school counselor, Andrew Quirk, completed a teacher questionnaire rating A.M.H.'s functioning in the six childhood domains. (T. 211-23.) Mr. Quirk indicated that he had counseling sessions with A.M.H. biweekly for four years. (T. 214, 221.) Mr. Quirk

_____

[2]     Specifically, Ms. Matlock and Ms. Hetko opined that A.M.H. had a "very serious problem" hourly in focusing long enough to finish assigned activities or tasks, changing from one activity to another without being disruptive, and working without distracting herself or others; and a "serious problem" hourly in refocusing to tasks when necessary, and carrying out multi-step instructions. (T. 179.) Ms. Matlock and Ms. Hetko opined that A.M.H. had an "obvious problem" weekly in completing work accurately without careless mistakes, and working at a reasonable pace/finishing on time; and a "slight problem" in paying attention when spoken to directly (daily), carrying out single-step instructions (hourly), waiting to take turns (weekly), organizing her own things or school materials (daily), and completing class/homework assignments (weekly). (*Id.*)

[3]     Specifically, Ms. Matlock and Ms. Hetko opined that A.M.H. had a "very serious problem" in seeking attention appropriately, expressing anger appropriately, following rules (classroom, games, sports), and respecting/obeying adults in authority; and a "serious problem" in playing cooperatively with other children. (T. 180.) Ms. Matlock and Ms. Hetko opined that A.M.H. had an "obvious problem" in making and keeping friends, and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation; a "slight problem" in relating experiences and telling stories, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, and taking turns in a conversation; and "no problem" in asking permission appropriately, and interpreting meaning of facial expression, body language, hints, and sarcasm. (*Id.*)

noted that Angela was diagnosed with ADHD and took medication for the impairment. (T. 214.) Mr. Quirk noted that A.M.H. did not receive special education services, and opined that she could perform grade level academics when she could attend and complete homework. (T. 214, 221).

In the domain of acquiring and using information, Mr. Quirk opined that A.M.H. had a "serious problem" in one area, an "obvious problem" in two areas, a "slight problem" in five areas, and "no problem" in two areas. (T. 215.)[4] Under the section for additional comments regarding this domain, Mr. Quirk indicated that A.M.H. could do well with prompts and reminders, and that medication had a significant effect. (*Id.*)

In the domain of attending and completing tasks, Mr. Quirk opined that A.M.H. had a "very serious problem" in two areas, a "serious problem" in four areas, an "obvious problem" in three areas, a "slight problem" in two areas, and "no problem" in two areas. (T. 216.)[5] Mr. Quirk commented that A.M.H.'s behavior and work habits were more consistent when she took her medication consistently. (*Id.*)

In the domain of interacting and relating with others, Mr. Quirk opined that A.M.H. had an "obvious problem" in two areas, a "slight problem" in six areas, and "no problem" in five

---

[4]     Specifically, Mr. Quirk opined that A.M.H. had a "serious problem" in understanding and participating in class discussions; and an "obvious problem" in comprehending and doing math problems, and recalling and applying previously learned materials. (T. 215.) Mr. Quirk opined that A.M.H. had a "slight problem" in understanding school and content vocabulary, reading and comprehending written material, providing organized oral explanations and adequate descriptions, expressing ideas in written form, and applying problem-solving skills in class discussion; and "no problem" in comprehending oral instructions, and learning new material. (*Id.*)

[5]     Specifically, Mr. Quirk opined that A.M.H. had a "very serious problem" daily in organizing her own things or school materials, and completing class/homework assignments; and a "serious problem" daily in focusing long enough to finish assigned activities or tasks, changing from one activity to another without being disruptive, completing work accurately without careless mistakes, and working without distracting herself or others. (T. 216.) Mr. Quirk opined that A.M.H. had an "obvious problem" daily in paying attention when spoken to directly, carrying out multi-step instructions, and working at a reasonable pace/finishing on time; a "slight problem" daily in refocusing to tasks when necessary, and waiting to take turns; and "no problem" daily in sustaining attention during play/sports activities, and carrying out single-step instructions. (*Id.*)

areas. (T. 217.)[6] Mr. Quirk did not identify any "very serious" problems or "serious" problems in this domain. (*Id.*) Mr. Quirk commented that behavior plans had been used over the years with minimal success. (*Id.*) Mr. Quirk further commented that A.M.H. required a strong connection with the authority figure in charge of the environment, and that the relationship would drive her success. (*Id.*)

Plaintiff argues that the ALJ failed to provide any explanation for rejecting the joint opinion of teachers, Ms. Matlock and Ms. Hetko, and the opinion of school counselor, Mr. Quirk, and failed to apply the regulatory factors and cite alternative medical evidence in evaluating their opinions.[7] (Dkt. No. 9, at 13 [Pl.'s Mem. of Law].)

First, the ALJ stated that he afforded "significant weight" to the joint opinion of Ms. Matlock and Ms. Hetko, and the opinion of Mr. Quirk, because these educational officials had experience working with A.M.H. on a regular basis in a school setting and were able to compare her with other students in her age group. (T. 22-23.)

Second, the Court finds that the ALJ properly applied the regulatory factors in evaluating the opinion of Ms. Matlock and Ms. Hetko, and the opinion of Mr. Quirk, pursuant to 20 C.F.R. § 416.927(c). As discussed in further detail below in Point III.B. of this Decision

---

[6]     Specifically, Mr. Quirk opined that A.M.H. had an "obvious problem" daily in seeking attention appropriately, and expressing anger appropriately; and a "slight problem" daily in playing cooperatively with other children, making and keeping friends, asking permission appropriately, following rules (classroom, games, sports), respecting/obeying adults in authority, and taking turns in a conversation. (T. 217.) Mr. Quick opined that A.M.H. had "no problem" in relating experiences and telling stories, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, interpreting meaning of facial expression, body language, hints, and sarcasm, and using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation. (*Id.*)

[7]      These factors include, among others, (1) the examining relationship, (2) the treating relationship, including the length of the relationship, the frequency of examination, and the nature and extent of the treatment relationship, (3) the supportability of the source's opinion, (4) the consistency of the source's opinion with the record as a whole, and (5) the specialty of the source. 20 C.F.R. § 416.927(c).

and Order, the ALJ accurately summarized the opinions of Ms. Matlock, Ms. Hetko, and Mr. Quirk in evaluating A.M.H.'s functioning in the childhood domains.  (T. 23-29.)  Further, where the ALJ did not adopt the entirety of their opinions within a domain, the ALJ cited inconsistencies between and among their opinions and other substantial medical evidence of record.  (*Id.*)

An ALJ is not required to adhere strictly to the entirety of a source's opinion.  *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *Zongos v. Colvin*, 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion).  Further, an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony. "  *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (finding that the ALJ was not required to reconcile two apparently inconsistent medical opinions; it was sufficient that the ALJ noted that he carefully considered the exhibits presented in evidence in reaching his decision).

Where, as here, an ALJ's reasoning and adherence to the regulations are clear, the ALJ is not required to review explicitly each and every factor of the regulation.  *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

For these reasons, the ALJ's assessment of the joint opinion of teachers, Ms. Matlock and

Ms. Hetko, and the opinion of school counselor, Mr. Quirk was supported by substantial

evidence.

### ii. Consultative Psychiatric Examiner, Jeanne Shapiro, Ph.D., and State Agency Psychiatric Consultant, Mariano Apacible, M.D.

On May 23, 2012, consultative psychiatric examiner, Dr. Shapiro, diagnosed A.M.H.

with ADHD, oppositional defiant disorder, and eneuresis. (T. 281.) Dr. Shapiro observed that

A.M.H.'s attention and concentration were grossly intact, and that A.M.H.'s recent and remote

memory skills were grossly intact. (T. 280.) Dr. Shapiro opined that A.M.H. appeared to be

functioning in the average range of intelligence and that her general fund of information was

appropriate to her age. (*Id.*) Dr. Shapiro opined that A.M.H.

> appears able to attend to, follow, and understand age-appropriate
> directions, but is distractible, and so may not be able to consistently
> maintain attention. She is able to complete some age-appropriate
> tasks, but may have difficulty doing so consistently due to attention
> and concentration problems secondary to ADHD. She is somewhat
> impulsive and may have difficulty responding appropriately to
> changes in the environment or being aware of dangers and taking
> needed precautions. She may have difficulty learning in accordance
> to her cognitive functioning due to ADHD. She can ask questions
> and request assistance in an age-appropriate manner. She does not
> always interact adequately with peers and adults.

(T. 281.)

On June 20, 2012, State agency psychiatric consultant, Dr. Apacible, reviewed A.M.H.'s

medical records and school records and assessed A.M.H. with mood disorder, anxiety disorder,

and ADHD. (T. 290-96.) Dr. Apacible opined that A.M.H.'s impairment or combination of

impairments was severe, but that A.M.H. did not meet, medically equal, or functionally equal the

Listings. (T. 290.) Dr. Apacible opined that A.M.H. had a marked limitation in the domain of

13

interacting and relating with others, and had a less than marked limitation in the domains of acquiring and using information, attending and completing tasks, and caring for oneself. (T. 291-93.) Dr. Apacible opined that A.M.H. had no limitation in the domains of moving about and manipulating objects, and health and physical well-being. (T. 293-94.)

Plaintiff argues that the ALJ failed to explain why he afforded less weight to the opinion of consultative examiner Dr. Shapiro than the opinion of non-examining State agency psychiatric consultant Dr. Apacible. (Dkt. No. 9, at 16-17 [Pl.'s Mem. of Law].)

First, the ALJ explained that he afforded reduced weight to the opinion of Dr. Shapiro because it was based on a single examination of A.M.H. and is not fully consistent with the overall evidence. (T. 23.) Nonetheless, the ALJ stated that he accounted for the limitations assessed by Dr. Shapiro in the domain findings. (*Id.*) The ALJ explained that he afforded significant weight to the opinion of State agency psychiatric consultant Dr. Apacible because of his programmatic expertise, his review of A.M.H.'s medical and educational records, and the relative consistency of his opinion with the overall evidence. (T. 22.)

Second, Plaintiff misstates that Dr. Shapiro opined that A.M.H. "couldn't" maintain attention and concentration secondary to ADHD. (Dkt. No. 9, at 16 [Pl.'s Mem. of Law].) A review of Dr. Shapiro's complete opinion indicates that Dr. Shapiro opined that Plaintiff "appears able to attend to, follow, and understand age-appropriate directions, but is distractible, and so *may not* be able to consistently maintain attention. She is able to complete some age-appropriate tasks, but *may have difficulty* doing so consistently due to attention and concentration problems secondary to ADHD." (T. 281) (emphasis added). Upon examination, Dr. Shapiro observed that A.M.H.'s attention and concentration were grossly intact. (T. 280.) However, at no point did Dr. Shapiro indicate that A.M.H. definitively "couldn't" maintain attention and concentration. (T. 278-282.)

An ALJ is entitled to rely on the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. §§ 416.912(b)(6), 416.913(c), 416.927(e); *see also Little v. Colvin*, 14-CV-63, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole."); *Cobb v. Comm'r*, 2014 WL 4437566, at *6 (N.D.N.Y. Sept. 9, 2014).

For these reasons, the ALJ's assessment of the opinions provided by Dr. Shapiro and Dr. Apacible was supported by substantial evidence.

**B.** **Whether the ALJ's Determination that A.M.H.'s Impairments Did Not Functionally Equal the Listings Was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10, at 5-17 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ found that A.M.H. does not have an impairment or combination of impairments that functionally equals an impairment set forth in the Listings. (T. 20-21.) Functional equivalence to a Listing is established when there is a finding of an extreme limitation in one domain of functioning or a finding of a marked limitation in two domains. 20 C.F.R. § 926a(a). Here, Plaintiff argues that A.M.H. has (1) a marked limitation in acquiring and using information, (2) a marked limitation in attending and completing tasks, and (3) an extreme limitation in interacting and relating with others. (Dkt. No. 9, at 11-15 [Pl.'s Mem. of Law].) The Court will examine the evidence with respect to A.M.H.'s functioning in each of these domains.

### i. Acquiring and Using Information

In assessing a child's functioning in the domain of acquiring and using information, the ALJ considers how well the child learns information, and how well she uses the information she has learned. 20 C.F.R. § 416.926a(g).

The regulations provide that a school-age child (i.e., a child between age six and attainment of age 12) should be able to learn to read, write, and do math, and discuss history and science. 20 C.F.R. § 416.926a(g)(2)(iv). Additionally, a school-age child should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with individuals or groups, by asking questions and expressing her own ideas, and by understanding and responding to the opinions of others. *Id.*

The regulations provide that an adolescent (i.e., a child age 12 to attainment of age 18) in middle and high school should continue to demonstrate what she has learned in academic assignments (i.e., composition, classroom discussion, and laboratory experiments). 20 C.F.R. § 416.926a (g)(2)(v). The child should be able to use what she has learned in daily living situations without assistance (i.e., going to the store, using the library, and using public transportation). *Id.* The child should be able to comprehend and express both simple and complex ideas, use increasingly complex language (vocabulary and grammar) in learning and daily living situations (i.e., to obtain and convey information and ideas). *Id.* The child should also learn to apply these skills in practical ways that will help her enter the workplace after finishing school (i.e., carrying out instructions, preparing a job application, or being interviewed by a potential employer). *Id.*

Some examples of limited functioning in this domain are when a child: (i) does not demonstrate understanding of words about space, size, or time (i.e., in/under, big/little,

morning/night); (ii)cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) has difficulty solving mathematics questions or computing arithmetic answers; or (v) talks only in short, simple sentences and has difficulty explaining what she means. 20 C.F.R. § 416.926a(g)(3). These examples do not apply to a particular age group, but cover a range of ages and developmental periods. *Id.* Additionally, the examples do not necessarily describe a "marked" or "extreme" limitation in the domain. *Id.*

Here, the ALJ determined that A.M.H. has a less than marked limitation in the domain of acquiring and using information. (T. 24.) The ALJ noted that Ms. Matlock and Ms. Hetko jointly opined that A.M.H. had "slight," "obvious," and "serious" problems in the domain of acquiring and using information, but did not opine that A.M.H. had any "very serious" problems in the domain. (*Id.*) The ALJ further noted that Ms. Matlock and Ms. Hetko indicated that A.M.H.'s behavior interfered with her ability to work independently, but that they believed that she would be capable of being more independent with her work. (*Id.*)

The ALJ noted that A.M.H. received academic intervention services ("AIS") for math and English language arts, but there is no evidence that the A.M.H. had been classified by her school district for special education and related services. (*Id.*) Further, the ALJ noted that various school progress reports indicated that A.M.H.'s poor grades were related "mainly to a failure to complete class assignments and work up to her potential rather than an intellectual inability to grasp grade-level concepts." (*Id.*)

The ALJ cited opinion evidence that supports his determination that A.M.H. has a less than marked limitation in this domain. (T. 22-29.) For example, the ALJ noted that Mr. Quirk opined that A.M.H. generally had "slight" and "obvious" problems, with one "serious" problem, and no "very serious" problems in the ten areas categorized under the domain. (T. 24.) The ALJ

noted that Mr. Quirk indicated that A.M.H. "can do well with prompts and reminders [and] medication has had a significant effect." (*Id.*) Additionally, the Court notes that, in the four areas where Ms. Matlock and Ms. Hetko opined that A.M.H. had "serious" problems in this domain, Mr. Quick indicated that A.M.H. had only "slight" problems in three of the areas and an "obvious" problem in the remaining one. (T. 215.)

The ALJ noted that Dr. Shapiro opined that, although A.M.H. may have difficulty learning due to ADHD, she is able to attend to, follow, and understand age-appropriate directions. (T. 24.) The ALJ noted that Dr. Apacible opined that A.M.H. had a less than marked limitation in the domain of acquiring and using information. (*Id.*) The ALJ noted that no treating source provided an opinion to support Plaintiff's allegations that A.M.H. had disabling limitations in the childhood domains. (T. 22.)

Finally, the ALJ cited treatment notes from A.M.H.'s pediatrician that support his determination that A.M.H. had a less than marked limitation in the domain of acquiring and using information. (T. 22-29.) The ALJ noted that treating pediatrician, James Campbell, M.D., generally indicated that A.M.H. was able to read, write, and perform at above-average levels in school. (T. 22.) The ALJ noted that a May 2013 treatment note from Dr. Campbell indicated that A.M.H.'s school performance was poor due to incomplete work, but that A.M.H. was still reading at grade level. (T. 24.)

Accordingly, the Court finds that the ALJ's conclusion as to this domain was supported by substantial evidence.

### ii. Attending and Completing Tasks

In assessing a child's functioning in the domain of attending and completing tasks, the ALJ considers how well a child is able to focus and maintain her attention, and how well she

begins, carries through, and finishes activities, including the pace at which she performs activities and the ease with which she changes them.  20 C.F.R. § 416.926a(h).

The regulations provide that a school-age child (i.e., a child between age six and attainment of age 12) should be able to focus her attention in a variety of situations in order to follow directions, remember and organize her school materials, and complete classroom and homework assignments.  20 C.F.R. § 416.926a(h)(iv).  The child should be able to concentrate on details and not make careless mistakes in her work (beyond what would be expected in other children of the same age who do not have impairments).  *Id.*  The child should be able to change her activities or routines without distracting herself or others, and stay on task and in place when appropriate.  *Id.*  The child should be able to sustain attention well enough to participate in group sports, read by herself, and compete family chores.  *Id.*  The child should also be able to complete a transition task (i.e., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.  *Id.*

The regulations provide that an adolescent (a child age 12 to attainment of age 18), in later years of school, should be able to pay attention to increasingly longer presentations and discussions, maintain concentration while reading textbooks, and independently plan and complete long-range academic projects.  20 C.F.R. § 416.926a(h)(iv).  The child should be able to organize her materials and to plan her time in order to complete school tasks and assignments. In anticipation of entering the workplace, she should be able to maintain her attention on a task for extended periods of time, and not be unduly distracted by her peers or unduly distracting to them in a school or work setting.  *Id.*

Some examples of limited functioning in this domain are when a child: (i) is easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (ii) is slow to focus

on, or fails to complete, activities of interest (i.e., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones she is capable of completing; or (v) requires extra supervision to remain engaged in an activity. 20 C.F.R. § 416.926a(h)(3). These examples do not apply to a particular age group, but cover a range of ages and developmental periods. *Id.* Additionally, the examples do not necessarily describe a "marked" or "extreme" limitation in the domain. *Id.*

Here, the ALJ determined that A.M.H. has a less than marked limitation in the domain of attending and completing tasks. (T. 24-25.) The ALJ noted that A.M.H. takes medication for ADHD, and noted that Dr. Shapiro opined that A.M.H. may not be able to maintain attention consistently. (*Id.*) The ALJ noted that Ms. Matlock and Ms. Hetko opined that A.M.H. had problems ranging from "slight" to "very serious" in the domain of attending and completing tasks. (*Id.*) However, the ALJ noted that Ms. Matlock and Ms. Hetko later reported that A.M.H. had recently been more calm, focused, and attentive. (*Id.*) The ALJ noted that Mr. Quirk, indicated that A.M.H. had several "serious" and "very serious" problems in the domains of attending and completing tasks, but stated that her behavior and work habits were more consistent when she took her medication consistently. (T. 25.) The ALJ noted that progress reports from teachers indicated that A.M.H. lacked organizational skills and did not turn in assignments or complete summer reading. (*Id.*)

Additionally, the ALJ cited treatment notes from A.M.H.'s psychiatrist and the opinion of Dr. Apacible that support his determination that A.M.H. had a less than marked limitation in the domain of attending and completing tasks. (*Id.*) The ALJ noted that a September 19, 2013, report from treating psychiatrist, Cecile Matip, M.D., indicated that A.M.H. had no problem with attention and concentration. (*Id.*) The ALJ further noted that Dr. Apacible opined that A.M.H. had a less than marked limitation in the domain of attending and completing tasks. (*Id.*)

Accordingly, for these reasons, the ALJ's determination that A.M.H. had a less than marked limitation in the domain of attending and completing tasks was supported by substantial evidence.

### iii.        Interacting and Relating with Others

This domain considers how well a child is able to initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others. 20 C.F.R. § 416.926a(i).

The regulations provide that a school-age child (i.e., a child between age six and attainment of age 12) should be developing more lasting friendships with children of the same age. 20 C.F.R. § 416.926a(i)(2)(iv). The child should begin to understand how to work in groups to create projects and solve problems. *Id.* The child should have an increasing ability to understand another's point of view and tolerate differences. *Id.* The child should be well able to talk to people of all ages, share ideas, tell stories, and speak in a manner that both familiar and unfamiliar listeners readily understand. *Id.*

The regulations provide that an adolescent (a child age 12 to attainment of age 18) should be able to initiate and develop friendships with children of the same age and relate appropriately to other children and adults, both individually and in groups. 20 C.F.R. § 416.926a(i)(2)(v). The child should be able to solve conflicts with peers, family members, or adults outside of the family. *Id.* The child should be able, in an intelligible manner, to express her feelings, ask for assistance, seek information, describe events, and tell stories, in all types of environments (i.e., home, classroom, part-time job, sports, or extra-curricular activities), and with all types of people (i.e., parents, siblings, friends, classmates, teachers, employers, and strangers). *Id.*

Some examples of limited functioning in this domain include when a child (i) does not reach out to be picked up and held by a care-giver; (ii) has no close friends or all friends are older or younger than the child; (iii) avoids or withdraws from people she knows or is overly anxious or fearful of meeting new people; (iv) has difficulty playing games or sports with rules; (v) has difficulty communicating with others (i.e., in using verbal and nonverbal skills to express herself, in carrying on a conversation, or in asking others for assistance); or (vi) has difficulty speaking intelligibly or with adequate fluency. 20 C.F.R. § 416.926a(i)(3).

Here, the ALJ determined that A.M.H. has a marked limitation in interacting and relating with others. (T. 26.) The ALJ noted that Dr. Shapiro opined that A.M.H. does not always interact adequately with peers and adults. (*Id.*) Ms. Matlock and Ms. Hetko opined that, in the domain of interacting and relating with others, A.M.H.'s functioning ranged from "no problem" to "very serious" problems. (T. 150.) Ms. Matlock and Ms. Hetko noted that A.M.H. was given a special pass to be excused from class at any time, and that she was switched from her social studies class due to her behavior. (T. 26.) Further, the ALJ noted that A.M.H. had received multiple in-school suspensions and detention assignments due to misconduct and insubordination. (T. 27.)

The ALJ noted that treatment notes from Dr. Campbell generally showed that A.M.H. was able to play cooperatively with others and get along with parents and peers, but the ALJ noted that an October 2013 treatment note from Dr. Matip indicated that A.M.H.'s mother reported worsening behavior, including a suspension from riding the school bus. (*Id.*) The ALJ noted that an October 2011 hospital report, dated before the application date, stated that police were called after A.M.H. fought with family members. (*Id.*) However, the ALJ noted that there was no evidence of additional incidents involving law enforcement or psychiatric hospitalizations during the relevant period under consideration. (T. 26.)

The ALJ noted that Mr. Quirk indicated that behavior plans were used with A.M.H. with minimal success, and stated that A.M.H. required a strong connection with an authority figure in charge of the environment. (T. 26.) The ALJ noted that Mr. Quirk opined that A.M.H. had "slight" and "obvious" problems in the domain of interacting and relating with others, with no "serious" or "very serious" problems in the domain. (*Id.*) Finally, Dr. Apacible opined that A.M.H. had a "marked" limitation in the domain. (T. 27.)

Accordingly, for these reasons, the ALJ's determination that A.M.H. had a marked limitation in the domain of interacting and relating with others was supported by substantial evidence.

### C.     Whether the ALJ Erred in Not Recontacting Ms. Matlock and Ms. Hetko

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10, at 13-15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ has an affirmative duty to develop a claimant's complete medical history. 20 C.F.R. § 416.912(d); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). By statute, an ALJ is required to develop a claimant's complete medical history for at least twelve months before an application for benefits was filed, "but also to gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision." *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998) (citing 42 U.S.C. § 423[d][5][B] *as incorporated by* 42 U.S.C. § 1382c[a][3][G] and 20 C.F.R. § 416.912[d]). This duty exists "[e]ven when a claimant is represented by counsel," due to the "non-adversarial nature of a benefits proceeding." *DeChirico,* 134 F.3d at 1184; *Lamay*, 562 F.3d at 509.

Recontacting medical providers is necessary when the ALJ cannot make a disability determination based on the evidence of record. 20 C.F.R. § 416.920b(c)(1). Additional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.920b(c)(1)-(4); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999); *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998). However, reviewing courts hold that an ALJ is not required to seek additional information absent "obvious gaps" in the administrative record that preclude an informed decision. *Rosa*, 168 F.3d at 79 n.5; *see also Hart v. Comm'r,* 07-CV-1270 2010 WL 2817479, at *5 (N.D.N.Y. July 16, 2010).

Plaintiff argues, in a footnote, that the ALJ erred in failing to recontact Ms. Matlock and Ms. Hetko because their joint report appears to be missing a page with information concerning the fourth domain (moving about and manipulating objects) and the fifth domain (caring for oneself). (Dkt. No. 9, at 12 [Pl.'s Mem. of Law].) However, a review of Ms. Matlock and Ms. Hetko's report indicates that it includes their opinion of A.M.H.'s abilities in the seven areas classified under the domain of moving about and manipulating objects. (T. 181.) Ms. Matlock and Ms. Hetko opined that A.M.H. had an "obvious" problem in all seven areas of the domain, with no "serious" or "very serious" problems.[8] (*Id.*) While the section pertaining to the domain of caring for oneself is missing, Plaintiff has not alleged that A.M.H. had significant difficulties in this domain. (*See generally*, Dkt. No. 9 [Pl.'s Mem. of Law].)

---

[8]        Specifically, Ms. Matlock and Ms. Hetko opined that A.M.H. had an "obvious" problem in moving the body from one place to another (i.e., standing, balancing, shifting weight, bending, kneeling, crouching, walking, running, jumping, and climbing), moving and manipulating things (i.e., pushing, pulling, lifting, carrying, transferring objects, and coordinating eyes and hands to manipulate small objects), demonstrating strength, coordination, and dexterity in activities or tasks, showing a sense of body's location and movement in space, integrating sensory input with motor output, and planning, remembering, and executing controlled motor movements. (T. 181.)

Further, the record contains other opinion evidence regarding A.M.H.'s abilities in the domain of caring for oneself and, therefore, Ms. Matlock and Ms. Hetko's opinion was not necessary for the ALJ to make a disability determination. (T. 29.) For example, the ALJ considered Mr. Quirk's opinion that A.M.H. had no "serious" or "very serious" problems in the domain of caring for oneself, as well as Dr. Apacible's opinion that A.M.H. had a less than marked limitation in this domain. (T. 29.) The Court notes that, on April 17, 2012, Plaintiff reported that A.M.H. could care for herself in 14 of 16 categories on the SSA functional report, including bathing, maintaining hygiene, dressing, hanging up clothes, obeying safety rules, and getting to school on time. (T. 164.) The only difficulties that Plaintiff checked on the report were accepting criticism and not doing what she is told. (*Id.*) Notably, the ALJ accounted for these difficulties in his finding that A.M.H. had a marked limitation in the third domain, interacting with others. (T. 26-27, 164.) Accordingly, even if the ALJ erred in not recontacting Ms. Matlock and Ms. Hetko, it is harmless.

For the forgoing reasons, remand is not necessary on this basis.

**D.     Whether the ALJ's Credibility Determination Was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 10, at 5-18 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

As a fact finder, the ALJ is free to accept or reject the testimony of a claimant's parent. *Williams,* 859 F.2d at 260. However, an ALJ's finding that a witness lacks credibility must be "set forth with sufficient specificity to permit intelligible plenary review of the record." *Id.,* at 261. "If the child claimant is unable adequately to describe his symptoms, the ALJ must accept

the description provided by testimony of the person most familiar with the child's condition, such as a parent." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 151-52 (N.D.N.Y. 2012) (citing *Jefferson v. Barnhart*, 64 F. App'x 136, 140 [10th Cir. 2003]). "In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child was testifying." *Hamedallah,* F. Supp. 2d at 152.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and

intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Here, the ALJ determined that A.M.H.'s medically determinable impairments could reasonably be expected to produce the alleged symptoms, however the statements concerning the intensity, persistence, and limiting effects of her symptoms are not fully credible. (T. 22.) Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F.R. § 416.929(c)(3)(i)-(vii), in assessing allegations of A.M.H.'s disabling symptoms and their limiting effects. Throughout the decision, the ALJ articulated the inconsistencies he considered in assessing the allegations of A.M.H.'s symptoms and in determining that A.M.H. is not as limited as alleged.

First, the ALJ considered Plaintiff and A.M.H.'s testimony concerning A.M.H.'s impairments, symptoms, and medical treatment. (T. 21-22.) For example, the ALJ noted that Plaintiff testified that A.M.H. was defiant, did not get along well with others, started fights, did not do well academically, required extra assistance with school work, and had difficulty getting to sleep. (T. 21.) The ALJ noted that Plaintiff testified that A.M.H. was treated for anxiety and ADHD by a doctor and a counselor, and took psychotropic medication. (*Id.*) Elsewhere in the decision, the ALJ noted that psychiatrist, Dr. Matip, treated A.M.H. since 2011 for anxiety

disorder, mood disorder, and ADHD. (T. 19.) The ALJ noted that Dr. Matip reported that A.M.H.'s treatment included therapy and medication management with Adderall, Focalin, Concerta, Vyvance, and Clonidine. (*Id.*)

Second, the ALJ considered A.M.H.'s daily activities. (T. 22.) The ALJ noted that A.M.H. testified that she had friends, loved school, and used Facebook and an iPad. (*Id.*) The ALJ noted that A.M.H. testified that she got along well with her classmates, was learning how to divide fractions, enjoyed Spanish, and her friends helped her with her Spanish homework. (*Id.*) The ALJ noted that A.M.H.'s treating pediatrician noted that A.M.H. played sports and rode a bike. (*Id.*)

Third, the ALJ noted medical evidence from treating and examining sources that is inconsistent with allegations of A.M.H.'s disabling symptoms. (*Id.*) The ALJ noted that treating pediatrician, Dr. Campbell, indicated that A.M.H. could read and write, performed at above-average levels in school, played cooperatively with others, got along with parents and peers, played sports, and rode a bike. (T. 22.) The ALJ noted that a September 19, 2013, report from treating psychiatrist, Dr. Matip., indicated that A.M.H. had no problem with attention and concentration. (T. 25.) The ALJ noted that A.M.H.'s mental health treatment records indicted that her Global Assessment of Functioning ("GAF") scores generally improved over time with treatment. (T. 22.) Finally, the ALJ noted that "no treating sources has provided an opinion to support the allegations of disabling limitation in the six childhood domains." (*Id.*)

Accordingly, the Court finds that the ALJ's credibility assessment was supported by substantial evidence. When the evidence of record "permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or

have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Here, the ALJ complied with the regulations and articulated the inconsistencies upon which he relied in discrediting the testimony of A.M.H.'s disabling impairments.

For these reasons, the ALJ's credibility assessment was supported by substantial evidence, and remand is not necessary on this basis.

### E. Whether the Appeals Council Failed to Consider New and Material Evidence

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 11, at 18-20 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only when it relates to the period on or before the date of the ALJ's decision. 20 C.F.R. § 416.1470(b); HALLEX I–3-3-6, 1993 WL 643129 (Dec. 27, 2012); *Perez v. Chater*, 77 F.3d 41, 45 (2d Cir. 1996). If additional evidence relates to the relevant period, the Appeals Council shall evaluate the entire record, including the new and material evidence submitted, if it finds that the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record. 20 C.F.R. § 416.1470(b); HALLEX I–3-3-6; *Paradise v. Comm'r*, 13-CV-0828, 2014 WL 4384230, at *2 (N.D.N.Y. Sept. 3, 2014). The weight of the evidence means that it is "more likely than not" that the totality of the evidence, including the additional evidence, would change the ALJ's actions, findings, or conclusion. HALLEX I-3-9-4, 2013 WL 643197 (Mar. 8, 2013).

Here, it is apparent from the record that the Appeals Council considered the reports that Plaintiff submitted from Deb Vecchio, L.M.S.W., at Oswego Hospital, dated July 14, 2014 and

July 15, 2014.  (T. 1-7.)  The Appeals Council properly determined that Plaintiff's new evidence related to a period after the ALJ's decision on January 28, 2014.  (T. 2.)  Accordingly, the Appeals Council was not required to take further action in this matter.

Therefore, the Appeals Council did not fail to consider new and material evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **<u>DENIED</u>**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **<u>GRANTED</u>**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **<u>AFFIRMED</u>**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: February 5, 2016
      Syracuse, New York

Hon. Glenn T. Suddaby
Chief U.S. District Judge